## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

**KEHRER BROTHERS
CONSTRUCTION, INC.,**

      **Plaintiff,**

**v.**

**CUSTOM BODY COMPANY, INC.,
CUSTOM TRUCK & EQUIPMENT, LLC, f/k/a
CUSTOM BODY, LLC,
and ATLAS TRUCK SALES, LLC, d/b/a
CUSTOM TRUCK SALES, LLC ,**

      **Defendants.**                                    **Case No. 05-cv-246-DRH**

### MEMORANDUM & ORDER

**HERNDON, Chief Judge:**

### I.  Introduction

This case concerns an allegedly defective commercial hydraulic crane purchased by plaintiff Kehrer Brothers Construction, Inc. ("Kehrer").  Plaintiff thus filed suit against several corporate entities, including the crane manufacturer and dealer.  Since initially filing suit, Plaintiff has reached settlement with the crane manufacturer and now seeks relief against entities Plaintiff believes bear liability for the sale of the crane.  Therefore, Plaintiff's Third Amended Complaint (Doc. 131) is comprised of two counts brought against the three remaining defendants.  Count I states a claim for breach of express warranty.  Count II states a claim for breach of

the implied warranties of merchantability and fitness for a particular purpose. Before the Court are three separate Motions for Summary Judgment, each filed by the remaining three defendants: Atlas Truck Sales, LLC, d/b/a Custom Truck Sales, LLC ("Atlas") (Doc. 132), Custom Truck & Equipment, f/k/a Custom Body, LLC ("Custom Truck") (Doc. 133) and Custom Body Company, Inc. ("Custom Body") (Doc. 134). Plaintiff has responded in opposition to each, making the issues ripe for determination (Docs. 135, 137 & 138). For reasons discussed within this Order, Atlas' Motion is granted in part and denied in part; Custom Truck's Motion is also granted in part and denied in part; lastly, Custom Body's Motion is granted in part and denied in part.

## II. <u>Background</u>

Plaintiff is in the commercial roofing business (Doc. 131 - Third Am. Comp., ¶ 1). Defendants Custom Body, Custom Truck and Atlas all market custom trucks for use in the construction and roofing industries (*Id*. at ¶¶ 2-4). In August 2002, Plaintiff purchased a Terex TC-4792 Crane (the "Crane") and a Kenworth T-800 Crane Truck (the "Truck") for the price of $136,000 (Doc. 131, ¶ 13). Plaintiff made an initial down payment of $68,000 and paid the remaining $68,000 upon delivery of the Crane and Truck in September 2002 (*Id*. at ¶¶ 16, 18-20). The Crane was manufactured by Terex Corporation (*Id*. at ¶ 5). Terex-RO Corporation is a wholly-owned subsidiary of Terex Corporation (both entities collectively referred to

as "Terex") (*Id*. at ¶ 6).[1]  Atlas was a dealer of Terex cranes (*Id*. at ¶¶ 6-7).  The Truck Plaintiff purchased was originally sold by Custom Body to Atlas, who then sent it to Terex to install the Crane on the Truck (*Id*. at ¶¶ 17-18; Doc. 134, p. 2).

Plaintiff alleges that the Crane is defective because it repeatedly "retract[s] without warning and without input from the operator" (Doc. 131, ¶ 24). Plaintiff claims it first became aware of this defect on October 7, 2002, while attempting to put the Crane into service for its roofing business, whereupon it notified Atlas of the Crane's faulty retraction.  Atlas attempted to repair the Crane on five separate occasions, beginning November 2002 through July 2003, due to numerous defects, such as improper retracting of the Crane, leaking hoses, a defective stop, a broken throttle cable, a defective circuit hose, a leaking swivel on the roofers reel, a defective counterbalance cartridge and a defective winch motor (*Id*. at ¶ 27, Exs. 6-10).  Each time, Atlas submitted a Warranty Claim Report and corresponding Credit Memos to Terex, seeking reimbursement for parts and labor. Plaintiff also alleges that on one occasion in August 2004, Atlas once again attempted to repair the Crane at no charge to Plaintiff and without submitting a reimbursement request to Terex (*Id*. at ¶ 31).  Yet, despite all attempts at repair, Plaintiff believes the Crane is still defective, alleging that it continues to improperly retract without warning and without input from the operator (*Id*. at ¶¶ 32-33).

---

[1]  Initially, Plaintiff also brought claims against the Terex defendants, but the parties have since reached settlement; subsequently, Plaintiff voluntarily dismissed the Terex defendants from the suit.

Although Plaintiff had purchased other Terex cranes in the past, it had never purchased a crane through Atlas. Plaintiff's owner, Joe Kehrer, states in his affidavit that as part of its sales pitch, Atlas told him it would "stand by the Crane and that the Crane would have a warranty." The Crane came with a written Limited Warranty Statement (the "Warranty"),[2] which reads, in pertinent part:

> Terex-Ro Corp. warrants that all new products manufactured by Terex-RO Corp. which have been "properly registered" shall be free from defects in materials and workmanship for three hundred sixty five days (365) after the "in service date". "Properly registered" means the following three forms are completed, signed by dealer and customer as required and received at Terex-RO Corp. plant within five (5) days of the service date: (1) warranty registration; (2) certification of pre-delivery inspection and service; and (3) certification of customer operator orientation. The "in service date" shall be the first to occur of date of sales to the dealer's customer; or entry to dealer's rental fleet. If any product fails to meet the foregoing warranty and such defect is properly reported to Terex-RO Corp. during said three hundred sixty five (365) day period, Terex-RO Corp. will be responsible for the reasonable cost of labor and Terex-RO Corp. standard parts to correct any such defect. This warranty shall only apply to warranty work that is performed by an authorized dealer facility.

> \*\*\*

> No representative of Terex-RO Corp. or any dealer has authority to change the terms of this warranty in any manner whatsoever and no assistance to any purchaser by a dealer or by Terex-RO Corp. in repair or operation of Terex-RO Corp. products shall constitute a waiver of the conditions of this warranty nor shall such assistance extend or revive it.

> \*\*\*

---

[2] The Truck also came with its own separate written warranty, but Plaintiff has not alleged that the Truck is defective.

Upon the expiration of the warranty period all liability of Terex-RO Corp. shall terminate except with respect to those warranty claims properly filed with Terex-RO Corp. prior to such expiration. No action or breach of the terms hereof shall be commenced later than one (1) year after the alleged breach.

\*\*\*

IN NO EVENT SHALL TEREX-RO CORP. BE LIABLE FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL OR SPECIAL DAMAGES RESULTING FROM THE FAILURE OF ANY PRODUCT FROM ANY OTHER EVENT, INCLUDING WITHOUT LIMITATION, LOSS OF PROFIT OR OTHER COMMERCIAL LOSS OR INJURY OR DAMAGE TO PERSONS OR PROPERTY.

\*\*\*

EXCEPT AS SPECIFICALLY AND EXPRESSLY REQUIRED BY LAW, TEREX-RO CORP. MAKES NO OTHER WARRANTIES, EXPRESSED OR IMPLIED, INCLUDING ANY WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE AND THE FOREGOING WARRANTIES ARE EXCLUSIVE AND SUPERSEDE ALL OTHER WARRANTIES WHETHER WRITTEN, ORAL, IMPLIED OR STATUARY.

(Doc. 131, ¶ 21, Ex. 4).

Plaintiff has filed suit for breach of the Crane's express written warranty, alleging that the numerous failed attempts to repair the Crane demonstrate that the Crane was not free from defects as warranted. Although the manufacturer of the Crane, Terex, is no longer a party to this suit, Plaintiff argues that Atlas, as its authorized dealer, adopted the written warranty and is estopped from denying its obligations under the Warranty. Plaintiff also claims that because the written warranty failed of its essential purpose, the warranty's disclaimer should not be enforceable. Plaintiff also states a claim for breach of the implied warranty of

merchantability and the implied warranty of fitness for a particular purpose. Claiming it spent over $15,667.06 in various repairs, Plaintiff seeks this amount in compensatory damages, along with its expended costs to rent a crane to replace the defective Crane and costs to eventually replace the Crane, as well as damages for loss of use and lost man-hours (*Id*. at ¶ 42).

Plaintiff believes that defendant Custom Truck is also liable for breach of the Warranty and implied warranties, alleging it is a "successor to and continuation of" Atlas (*Id*. at ¶ 8). Pursuant to an Asset Purchase Agreement (the "Agreement"), on January 19, 2003, Custom Truck, when it was formerly "Custom Body, LLC,"[3] purchased certain assets and liabilities from Atlas (*Id*. at ¶ 8, Ex. 11; *see also* Doc. 133, p. 2). Shortly thereafter, Custom Body, LLC, merged with Custom Truck; Custom Truck was the surviving entity of the merger (Doc. 133, p. 3, Ex. B). Section 1.03 of the Agreement set forth the liabilities Custom Truck was to assume from Atlas, as well as the excluded liabilities, providing:

> (a)　<u>Assumed Liabilities.</u>　The Buyer agrees to assume all ongoing obligations related to the Business for debts incurred by the Buyer after the Closing Dates (the "Assumed Liabilities"). The following is a partial list of the Assumed Liabilities and is not meant to be all inclusive:
>
> ***
>
> > All purchases and expenses related to the operation of the business where the benefits accrue to the Buyer after closing;
> > All deals (contracts) in process at Closing.
>
> The Assumed Liabilities will only be Assumed Liabilities if the

---

[3]　Not to be confused with Custom Body Company, Inc., the third remaining defendant.

Buyer has knowledge of the historical amounts of these liabilities. Sellers agree to provide information as requested by Buyer regarding historical warranty and liability claims.

(b)    <u>Excluded Liabilities.</u>  Other than the Assumed Liabilities, Buyer will not assume or have any responsibility for any liabilities or obligations of Sellers (the "Excluded Liabilities").

(Doc. 131, ¶ 8, Ex. 11, p 5; *see also* Doc. 133, pp. 2-3).

Although defendant Custom Body argues that it only sold the Truck and had nothing to do with the sale of the Crane, Plaintiff believes Custom Body is also liable for breach of express and implied warranties. Plaintiff bases its assertions upon a theory that all three Defendant operate as a single corporate entity and should therefore all be liable. Because in their initial pleadings and briefings the three remaining Defendant entities referred to themselves collectively, Plaintiff continues to refer to all three Defendants as the "Custom Defendants" in its allegations. Plaintiff points out that it is only with the most recently amended Complaint that Defendants have chosen to refer to themselves as separate entities, rather than in the collective.

### III.  Legal Standard

Summary judgment is appropriate under the Federal Rules of Civil Procedure when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." **FED. R. CIV. P. 56(c)**; ***Celotex Corp. v. Catrett***, **477 U.S. 317,**

**322 (1986)**.  The movant bears the burden of establishing the absence of factual issues and entitlement to judgment as a matter of law.  ***Wollin v. Gondert***, **192 F.3d 616, 621-22 (7th Cir. 1999)**.  The Court must consider the entire record, drawing reasonable inferences and resolving factual disputes in favor of the non-movant.  ***Schneiker v. Fortis Ins. Co.***, **200 F.3d 1055, 1057 (7th Cir. 2000); *Baron v. City of Highland Park*, 195 F.3d 333, 337-38 (7th Cir. 1999)**.

In response to a motion for summary judgment, the nonmovant may not simply rest on the allegations as stated in the pleadings.  Rather, the nonmovant must show through specific evidence that an issue of fact remains on matters for which the nonmovant bears the burden of proof at trial.  ***Walker v. Shansky***, **28 F.3d 666, 670-71 (7th Cir. 1994),** *aff'd,* **51 F.3d 276 (citing *Celotex*, 477 U.S. at 324)**.

## IV.  Analysis

### A.     Breach of Express Warranty

The only express warranty Plaintiff claims Defendants breached was the written Warranty accompanying the Crane (Doc. 131, Ex. 4).  Specifically, Plaintiff alleges that Atlas adopted this written warranty, through its conduct at the time of sale and its repeated attempts to repair the crane, and is therefore estopped from denying its obligations under the Warranty (*Id*. at ¶ 35).  The Defendants each argue that they did not adopt the Warranty.  Atlas, the entity that sold the Crane and also did the repair work, perhaps has the most substantive of arguments in this regard.

Custom Truck and Custom Body would only have "adopted" the warranty under Plaintiff's theory that the three Defendants are actually operating as a single corporate entity. The Court will first address the arguments made by Atlas as to whether Defendants adopted the Warranty.

Plaintiff brings its breach of express warranty claim pursuant to the Illinois Uniform Commercial Code ("UCC").[4] Under the Illinois UCC, an express warranty is "any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain . . . that the goods shall conform to the affirmation or promise." **810 ILL. COMP. STAT. 5/2-313(a)**. Atlas contends that the Warranty Plaintiff alleges was breached was issued by Terex-RO as its manufacturer's limited written warranty for the Crane (Doc. 132, p. 4). There is no question that the Warranty for the Crane was made by Terex-RO, as it clearly reads: "*Terex-RO Corp. warrants* that all new products manufactured by Terex-RO Corp. which have been 'properly registered' shall be free from defects in materials and workmanship for three hundred sixty five days (365) after the 'in service date'" (Doc. 131, Ex. 4) (emphasis added). Plaintiff, however, asserts that under Illinois law, a dealer may adopt a manufacturer's warranty by its conduct, (Doc. 135, p. 3, citing ***Felde v. Chrysler Credit Corp.*, 580 N.E.2d 191, 197 (1991)**).

---

[4] As this case sits in diversity, it is proper for the Court to apply the substantive law of the forum state in which it sits when dealing with state law claims. ***See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)**.

The Warranty itself was good for a year.  Plaintiff alleges that Atlas continued to attempt to repair the Crane after the expiration of the one-year warranty period (Doc. 131, ¶ 39; Doc. 135, p. 4).  Further, Atlas did not charge Plaintiff for the work nor did it apply to Terex for reimbursement (*Id.*).  Plaintiff believes Atlas, through its actions, thus adopted the Warranty as its own (*Id.*).  In support, Plaintiff cites to the deposition testimony of Larry Warsop, the Service Manager for Custom Truck (Doc. 135, Ex. 20 - Warsop depo., pp. 59-61).  Warsop testified, during his deposition, that the repair work after the one-year warranty period was done out of "customer goodwill" (*Id.*, Ex. 20, 59:16-24).  Nowhere is there an indication that this repair work was performed because Atlas believed it was liable under the Warranty, as Plaintiff asserts (Doc. 135, p. 4).

Plaintiff also contends that Atlas assured Plaintiff's President, Joe Kehrer, that they would stand behind the manufacturer's warranty for the Crane (*Id.*).  This assurance was part of the benefit of the bargain which, Plaintiff claims, induced it to purchase the Crane from Atlas (Doc. 135, Ex. 12 - Affidavit of Joe Kehrer, ¶¶ 7-12).  In other words, Kehrer stated that he would have never purchased the Crane on behalf of Plaintiff but for the assurances made by Atlas regarding their intention to "stand by the Crane and that the Crane would have a warranty" (*Id.*, Ex. 12, ¶¶ 10 & 12).  Lastly, Plaintiff claims Atlas was compensated for selling the Crane with the Warranty (Doc. 135, p. 4).

Examining the Kehrer Affidavit, the first assurance he claims Atlas made was that they would "stand by the Crane" (Doc. 135, Ex. 12, ¶10).  Making this

assurance does not imply Atlas intended to adopt the Warranty, even if Kehrer claims it led him to believe that Atlas was obligating itself under the Warranty. Yet, whether this assurance itself created a separate express warranty is not at issue here; Plaintiff's claim does not involve any warranty other than the written limited Warranty issued by manufacturer Terex-RO. Secondly, assuring Kehrer that the Crane would have a warranty does little to create a question of fact about whether Atlas adopted the Warranty. At most, it is an accurate statement, as the Crane did, in fact, have a warranty – the one issued by Terex-RO. The fact that Atlas may have performed repair work after the one-year warranty period at no charge to Plaintiff only serves to bolster Warsop's testimony that it was done out of customer goodwill, and offering of which the Court is not apt to construe as adoption of the Warranty. At most, it is reinforcement of the assurance by Atlas that it would "stand by the Crane."

Plaintiff cites to **Felde** in support of its allegation that Atlas adopted the Warranty; a case the Court finds distinguishable. Plaintiff is correct in that many of the facts in **Felde** parallel the instant suit. **Felde** examined the issue of whether an automobile dealer adopted the manufacturer's written warranty. Like Atlas, the dealer in **Felde** performed post-sale repair work on the warranted automobile at no charge to the plaintiff. However, what the Illinois Appellate Court found determinative was the fact that the dealer invoice issued to Plaintiff explicitly incorporated the manufacturer's warranty. **Felde, 580 N.E.2d at 197 (the dealer**

invoice stating **"that no warranties have been made by the dealer or manufacturer 'excepting only Chrysler Corporation's current printed warranty applicable to such vehicle . . . which warranty is incorporated herein and made a part hereof . . . .'"**).  In fact, ***Felde*** distinguished itself from ***Lytle***, a case cited by Atlas in support of its argument that it did not adopt the Warranty (Doc. 132, pp. 5-6, citing ***Lytle v. Roto Lincoln Mercury & Subaru, Inc.*, 521 N.E.2d 201 (Ill. App. Ct. 1988)**)).  In ***Lytle***, the Illinois Appellate Court found that an automobile dealer failed to adopt the manufacturer's express written warranty by merely presenting the plaintiff with the warranty booklet upon the sale of the automobile.  ***Id.* at 205**.  Although the dealer signed the inside cover of the warranty booklet, the ***Lytle*** court did not construe this action as adopting the manufacturer warranty.  ***Id.* at 203-05**.

Again, in this case the Warranty very clearly states that the Crane is warranted by Terex-RO, as it begins, "Terex-RO Corp. warrants . . ." (Doc. 131, Ex. 4).  The fact that Atlas performed the repair work does not provide the Court will ample evidence to create a question of material fact that it adopted the Warranty, especially as the Warranty itself requires the warranty repair work be performed by an authorized dealer, such as Atlas (*Id.*).  More importantly, Atlas never issued any documentation expressly incorporating the Warranty into its terms of the sale, like the dealer in ***Felde***.  The assurances Plaintiff claims Atlas made also do not create a question of material fact that Atlas adopted the Warranty, for reasons already

discussed herein.

In sum, the Court finds no evidence or supporting case law to support the existence of a material issue of fact regarding whether Atlas adopted the Warranty issued by Terex-RO for the Crane Plaintiff purchased. Accordingly, Atlas is entitled to summary judgment as a matter of law on Plaintiff's breach of express warranty claim in Count I of its Third Amended Complaint (Doc. 131). Further, as any potential liability incurred by either Custom Truck or Custom Body under the Warranty theoretically hinged upon liability incurred by Atlas, these two Defendants are also entitled to summary judgment on this issue. Lastly, because the Court has determined that Defendants did not adopt the Warranty, and as there are no other express warranties at issue here, there is no need to determine the issues raised that relate directly to the Warranty, such as whether the Warranty is a "warranty by law," whether the Warranty's disclaimer and exclusions apply, and whether Plaintiff timely filed suit under the Warranty's one-year limitations period. The Court finds these grounds for summary judgment to be moot.

## B.  Breach of Implied Warranties

Count II of Plaintiff's Third Amended Complaint states a claim against all three Defendants for breach of the implied warranties – specifically, the implied warranty of merchantability, as set forth in **810 ILL. COMP. STAT. 5/2-314**,[5] and the

---

[5] The implied warranty of merchantability requires that, unless excluded or modified under Section 2-316, the goods shall be fit for the ordinary purposes for which such goods are used; this warranty is implied in a sales contract for such goods as long as the seller is a merchant with respect to goods of that kind. **810 ILL. COMP. STAT. 5/2-314**.

implied warranty of fitness for a particular purpose, as set forth in **810 ILL. COMP. STAT. 5/2-315**[6] (Doc. 131, ¶¶ 43-54).  In each of their respective summary judgment motions, Defendants argue that these implied warranties were properly disclaimed via the written disclaimer in the written Warranty, issued by Terex-RO for the Crane, as well as a disclaimer found in Atlas's Purchase Order for a Motor Vehicle form ("Purchase Order"), for Plaintiff's purchase of the Crane and Truck (Doc. 132, p. 9, Ex. A).  Because the Court has already found, as a matter of law, that Defendants did not adopt the Warranty issued by Terex-RO, there is no need to analyze whether the Warranty's disclaimer applies to limit Defendants' liability to Plaintiff for breach of implied warranties.  Therefore, the Court is left with the issue of whether the disclaimer found in the Purchase Order serves to bar Plaintiff's breach of implied warranties claim.

The Illinois UCC provides that a seller may exclude or modify the implied warranties of merchantability and fitness for a particular purpose, as set forth in **810 ILL. COMP. STAT. 5/2-316**.  For a written disclaimer to properly exclude the implied warranty of merchantability, it must specifically mention the word "merchantability" and the writing must be conspicuous.  *Id.* **5/2-316(2)**.  To properly exclude the implied warranty of fitness for a particular purpose, the disclaimer must also be made in writing and conspicuous.  *Id.*  For a writing to be "conspicuous," as

---

[6]  The implied warranty of fitness for a particular purpose requires that when a "seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods," the goods shall be fit for such purpose, unless excluded or modified under Section 2-316.

defined under the Illinois UCC, it must be "in larger or other contrasting type or color," to set it apart from the remainder of the text. **810 ILL. COMP. STAT. 5/1-201(10)**. In other words, the disclaimer must appear in such a way that a reasonable person would notice it. *Id.*

Here, Defendants claim that the Purchase Order disclaimer met the Illinois UCC requirements and thus, should operate to bar Plaintiff from bringing its breach of implied warranties claim. The Purchase Order indicates that on August 16, 2002, Plaintiff was to purchase both the Crane and Truck from Atlas for the price of $136,000(Doc. 132, Ex. A). The disclaimer is found at the bottom of the Purchase Order and reads as follows:

> DISCLAIMER OF WARRANTY: The dealer expressly disclaims all warranties, either express or implied, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE. The dealer may provide the purchaser with a separate writing in which the dealer expressly agrees to assume certain obligations which obligations shall not be expanded beyond the terms of such separate writing. The dealer is not a party to any manufacturers' warranty and neither assumes nor authorizes any other person to assume for the dealer any liability in connection with the sale of this vehicle. Purchaser shall not be entitled to recover from the dealer any consequential damages, damages to property, damages for loss of use, loss of time, loss of profits or income, or any other incidental damages. Purchaser acknowledges being so informed in writing prior to sale.

(Doc. 132, Ex. A).

The Purchase Order disclaimer, which is in writing, specifically mentions the word "merchantability," as well as the term "fitness for a particular purpose." Although not all of the disclaimer language uses capitalized lettering, the

essential terms of "disclaimer," "implied warranties," "merchantability," and "fitness for a particular purpose" are all in capital type font. The Purchase Order form itself does not have much surrounding text to distract a reasonable person from noticing this disclaimer section. Further, the disclaimer is sectioned-off from the rest of the purchase order, at the bottom of the form. Therefore, as the Illinois UCC puts it within the Court's discretion to determine if a writing is "conspicuous," the Court determines the Purchase Order disclaimer meets the technical statutory requirements to effectively disclaim the implied warranties of merchantability and fitness for a particular purpose. **810 ILL. COMP. STAT. 5/1-201(10) & /2-316**.

However, there appears to be one problem with the Purchase Order disclaimer that prevents the Court from finding that it bars Plaintiff's implied warranties claim. Directly underneath the disclaimer are two signature lines, one for the purchaser and co-purchaser (if applicable) (*Id.*). Both signature lines are blank. It is directly underneath a section requiring both the seller and purchaser's signature. This particular section reads:

> NOTICE TO THE PURCHASER: Do not sign this order before you have read all of the terms and conditions on BOTH THE FACE AND REVERSE SIDE. You are entitled to an exact copy of the order you sign. PURCHASER ACKNOWLEDGES he has read and received a completed copy of this order and, if applicable, the window form. PURCHASER CERTIFIES he is of majority age and no credit has been extended.
> THIS ORDER IS NOT VALID UNLESS SIGNED AS ACCEPTED BY DEALER OR HIS AUTHORIZED REPRESENTATIVE.

(Doc. 132, Ex. A).

Underneath are signature lines for the salesman as well as the purchaser (and co-purchaser, if applicable). The signature line for the salesman bears the signature of what appears to be Mr. Steve Punch. Yet, again, the signature line for the purchaser (Plaintiff) is blank.

The requirement that a writing be conspicuous so that a reasonable person would notice it gives rise to the notion that the reasonable person actually *see* the document containing the disclaimer language. While the Court cannot find case law affirmatively requiring a disclaimer of implied warranties be signed by the person it is to operate against in order to be effective, it seems only logical in this instance to deem it a requirement, especially when the seller itself has placed a signature line for the purchaser immediately below the disclaimer. The parties, in their briefs, have also failed to cite any supportive case law to convince the Court otherwise. On the other hand, several cases, although not binding authority, serve to bolster the Court's finding. ***See Sithon Maritime Co. v. Holiday Mansion*, 983 F. Supp. 977, 987-88 (D. Kan. 1997) (disclaimer located on page 87 of the operation and maintenance manual found to be inconspicuous and therefore ineffective as it was also not signed and evidence showed that the plaintiff did not receive the document until after agreeing to the purchase); *Agristor Leasing v. Guggisberg*, 617 F. Supp. 902, 909 & n.5 (D. Minn. 1985) (warranty disclaimer found on back of the form not conspicuous under UCC requirements, especially considering that the purchasers did not sign the back of the form and**

evidence could not show they were actually made aware of the disclaimer language); *Scientific Application, Inc. v. Delkamp*, 303 N.W.2d 71, 75 (N.D. 1981) (warranty disclaimer not incorporated into sales contract and the plaintiff never signed the contract containing the disclaimer, so the court deemed disclaimer was not basis of the bargain and thus, insufficient to prevent the plaintiff from bringing breach of warranty claim); *Omni Flying Club, Inc. v. Cessna Aircraft Co.*, 315 N.E.2d 885, 888 (Mass. 1974) (finding warranty disclaimer language ineffective when disclaimer language appeared on unnumbered page after the index in the defendant's owner's manual, was not signed by either party and evidence could not show the plaintiff received a copy of at the time of sale); *Jerry Alderman Ford Sales, Inc. v. Bailey*, 294 N.E.2d 617, 619 (Ind. Ct. App. 1973) (warranty disclaimer deemed not sufficiently conspicuous under the UCC requirements to exclude implied warranties as it was located at the bottom of the back side of the sales contract and did not require the purchaser's signature).

The Purchase Order disclaimer, although not embedded in a lengthy owner's manual or on the back side of the form, still gives the Court pause, as there has been no conclusive evidence brought forth that Plaintiff was either informed of the Purchase Order disclaimer prior to the sale or *ever* received the Purchase Order. These unknown items create a question of material fact regarding whether Plaintiff had notice (at least constructive notice) of the disclaimer prior to entering into the

sales purchase agreement for the Crane and Truck and also whether this disclaimer language was ever incorporated into the sales contract, thereby becoming part of the basis of the bargain. While Atlas may have included the purchaser signature line at the bottom of the disclaimer language to secure it against potential buyer claims for lack of notice, in this instance, it has worked to the opposite effect. Therefore, Atlas must be denied summary judgment with regard to Plaintiff's claim for breach of implied warranties (Count II), as a question of material fact remains regarding whether Plaintiff had notice of this disclaimer prior to or at the time of sale of the Crane.

## C.     Damages

Defendants also moved for summary judgment on Plaintiff's request for incidental and consequential damages, arguing that the Warranty, issued by Terex-RO for the Crane, precluded Plaintiff from seeking such damages. As the Court has found that Defendants did not adopt the Warranty, and because the Warranty language only excludes Terex-RO from liability for such damages, Defendants' argument is ineffectual. Hence, there is no need for the Court to herein determine the issues of whether the Warranty failed of its essential purpose (considering that Plaintiff has already settled with Terex) or whether such exclusion of damages was unconscionable. Defendants are denied their request for summary judgment regarding Plaintiff's claims for incidental and consequential damages. The fact that Plaintiff has purchased a new crane for a reduced price as part of its settlement with Terex can certainly serve as evidence for the trier of fact to consider in fashioning an

award, but there is no danger of Plaintiff receiving a "double recovery," as incidental and consequential damages represent other alleged monetary injuries other than mere loss of value, as Defendants suggest.

**D.    Successor Liability**

**1.    Custom Truck**

As the Court has determined Plaintiff's claim for breach of implied warranties survives Atlas's summary judgment motion, it must next turn to the issue of whether Custom Truck can be deemed to have assumed this potential liability. As the facts show, certain liabilities and assets of Atlas were purchased by Custom Body, LLC, through an Asset Purchase Agreement (*see supra*, pp. 6-7 of this Order). Further, by way of merger, Custom Truck now owns these purchased assets and liabilities as it is the surviving entity of a merger with Custom Body, LLC.[7] Custom Truck argues that the language of the Agreement clearly shows that it did not agree to purchase liability for Plaintiff's sales contract for the Crane, whereas Plaintiff believes it does. Additionally, Plaintiff alleges that because Custom Truck is a mere continuation or successor to Atlas, it is susceptible to all liability incurred by Atlas as though the two corporations were a single entity.

In Illinois, the general rule for a successor corporation purchasing the assets of another corporation is that it does not assume the seller's liabilities absent an express agreement to do so. ***General Elec. Capital Corp. v. Lease Resolution***

---

[7] For clarity's sake, the Court will deem Custom Truck the purchaser of certain assets and liabilities belonging to Atlas, by way of the Agreement.

***Corp.*, 128 F.3d 1074, 1083 (7th Cir. 1997)(citing *Myers v. Putzmeister, Inc.*, 596 N.E.2d 754, 755 (Ill. App. Ct. 1992), *appeal denied*, 602 N.E.2d 458 (1992))**. In this case, Custom Truck believes that from the language of the Asset Purchase Agreement it is clear that Custom Truck did not assume liability for Plaintiff's contract for the sale of the Crane and Truck by Atlas (Doc. 133, p. 5). Conversely, Plaintiff argues that the "partial list" of Atlas's liabilities assumed by Custom Truck, pursuant to the Agreement, included the phrase "all deals (contracts) in process at Closing" (Doc. 131, Ex. 11, p. 5). Therefore, Plaintiff believes the plain language of the Agreement shows that Custom Truck assumed liabilities for certain contracts, including all warranty liability for those contracts (Doc. 138, pp. 7-8). Moreover, the Agreement provided Custom Truck would only assume the liabilities defined as "all deals (contracts) in process at Closing" if it had knowledge of the historical amounts of the liabilities, with Atlas agreeing to provide all information "as requested by [Custom Truck] regarding historical warranty and liability claims" (Doc. 138, p. 8, citing to Doc. 131, Ex. 11, p. 5). Plaintiff asserts that this particular language shows Atlas and Custom Truck clearly contemplated that the assumption of liabilities for the "deals (contracts) in process at Closing" would include all accompanying warranties, otherwise, such language would be superfluous (Doc. 138, p. 8).

Custom Truck notes that Plaintiff's entered into its sales contract in August 2002 and made its final payment on the contract in September 2002. The

date of the Agreement is January 19, 2003. Therefore, Custom Truck asserts that Plaintiff's sales contract for the Crane and Truck could not have been considered one of the "deals (contracts) in process at Closing," as the sale was complete, rather than being processed at the time of the Agreement (Doc. 133, p. 5). Yet, Plaintiff believes there is a question of material fact regarding the interpretation of the Assumed Liabilities section of the Agreement. Although there is no dispute as to when Plaintiff entered into the sales contract for the Crane and Truck or when it made the final down payment, Plaintiff asserts that its warranty claim on the Crane was a "contract in process" at the time of the Agreement. Hence, Plaintiff argues that its warranty claim should be included in the list of assumed liabilities.

It appears that while Custom Truck asserts that the Agreement was entered into on January 19, 2003, Plaintiff alleges the date was sometime in May, 2003. The Court observes that the Agreement itself, attached as Exhibit 11 to Plaintiff's Third Amended Complaint, is dated "January 19, 2003," but does not specifically state the date of the Closing of the Agreement; that date was left blank (*see* Doc. 131, Ex. 11, p. 6, § 1.06). So, it remains unknown to the Court as to the date of when the Closing actually occurred. However, evidence shows Atlas first performed warranty repairs on the Crane on January 10, 2003, as that is the earliest warranty claim report submitted to Terex that Plaintiff offers as evidence (Doc. 131, Ex. 6). This repair work occurred before the January 19, 2003 date, creating the question of fact of whether Atlas had notice that Plaintiff's Crane was defective before entering into the Agreement. Yet, it must be remembered that the Court has found

that Atlas never adopted the Warranty under which Plaintiff's claim was made. The Warranty pertained only to Terex; Atlas did not issue a written warranty on the Crane.

Atlas was not liable under the Warranty issued by Terex and therefore, when it did the warranty repair work on Plaintiff's Crane, there was no reason for Atlas to include Plaintiff's warranty claim as an existing warranty claim against it.[8] Even though the Court has determined that a question of material fact exists regarding Plaintiff's notice of the Purchase Order disclaimer in order to allow the breach of implied warranties claim to survive summary judgment, this will not aid Plaintiff with the instant issue. Atlas's potential liability for implied warranties due to a possible ineffective Purchase Order disclaimer does not constitute a concrete warranty claim which Atlas could have accounted for during the due diligence period of the Agreement. In other words, it is not a warranty claim likely known to Atlas at the time in order for it to provide the information to Custom Truck prior to the Closing of the Agreement. Finding the Agreement language does not show that Custom Truck purchased liability for Plaintiff's sales contract for the Crane and Truck, the Court must now look to whether Custom Truck is a "mere continuation" of Atlas.

Another exception to the general rule of "successor corporate nonliability," is where the purchasing entity is really a "mere continuation" of the

---

[8] The more likely reality is that Atlas kept track of the reimbursement funds it was owed by Terex for the warranty repair work on Plaintiff's Crane.

selling entity or where the transaction "amounts to a consolidation or merger of the purchaser or seller" entity or if the transaction occurs as a means to escape the selling entity's liabilities. ***Vernon v. Schuster*, 688 N.E.2d 1172, 1175-76 (Ill. 1997); *see also Brandon v. Anesthesia & Pain Mgmt. Assoc., Ltd.*, 419 F.3d 594, 599 (7th Cir. 2005) (also describing it as a corporate "reincarnation") (citing *Vernon*, 688 N.E.2d at 1176)**.  To determine whether the purchasing entity is really just a mere continuation of the selling entity, the Court must look to whether the corporate management and ownership between the two remains largely the same, but the purchasing entity "merely wears different clothes." ***Id.***  In other words, if the ostensible purchase of assets and liabilities is really just the same corporation "changing hats" in attempts to avoid liability, it is a fraudulent transaction. ***Id.***  Therefore, as the Illinois Supreme Court held, "if a corporation goes through a mere change in form without a significant change in substance, it should not be allowed to escape liability." ***Vernon*, 688 N.E.2d at 1176 (citation omitted)**.

In this case, Plaintiff alleges that after the Closing of the Agreement, Fred Ross remained an owner of both Atlas and Custom Truck, as did his brother, Jim Ross (Doc. 131, ¶ 8(c)).  Additionally, Plaintiff alleges all of Atlas's 100 employees became Custom Truck employees after the Closing, remaining in their same positions, including all managers (*Id*. at ¶¶ 8(d) & (e)).  Subsequently, Custom Truck also occupied the same business facility as Atlas had previously occupied, as well as used the same telephone and facsimile number Atlas previously used.  Further,

Plaintiff alleges that Custom Truck also continued to use Atlas's "doing business as" name on its business forms (*Id*. at ¶¶ 8(f) & (g)). Plaintiff further alleges that after the Closing, Custom Truck continued the same business operations that Atlas had previously engaged in, including performing warranty work on Terex cranes (*Id*. at ¶¶ 8(i) - (k)). Lastly, Plaintiff alleges that there is no evidence that Atlas remains an operating entity after the Closing (Doc. 138, pp. 6-7). In support of these allegations, Plaintiff offers the deposition testimony of Fred Ross (Doc. 138, pp. 5-6, citing Doc. 135, Ex. 16).

Custom Truck generally denies Plaintiff's allegations that it is a mere continuation of Atlas, but did not specifically respond to this argument in its summary judgment briefings. There appears to be ample evidence to create a question of material fact as to whether Custom Truck was a mere continuation of Atlas, thereby becoming responsible for Atlas's incurred liabilities, including any potential liability for breach of implied warranties on Plaintiff's Crane. As Custom Truck has not met its Rule 56 burden of proof to show otherwise, summary judgment as to its argument that it does not have successor liability for the Crane must be denied.

### 2. Custom Body

Custom Body also moves for summary judgment, arguing that it is not liable for any alleged defect of the Crane under either an express or implied warranty theory because it was not the seller of the Crane nor is it a "merchant" with respect to cranes. Instead, Custom Body claims it merely sold the Truck to Atlas, which

then sold it to Plaintiff.  As the Truck is not the subject of Plaintiff's claims against Defendants, Custom Body asserts that it bears no liability for Plaintiff's alleged injuries (Doc. 134).  Plaintiff challenges Custom Body's assertion, arguing that all of the Defendants actually operated as a single corporate entity and as such, Custom Body was a "de facto" seller of the Crane (Doc. 137, pp. 3-5).  In support of its contention, Plaintiff makes assertions similar to its argument that Custom Truck was a mere continuation of Atlas, stating that Custom Body shares the same officers, employees and business address as Custom Truck (*Id*. at p. 4).  Again, Plaintiff offers the deposition testimony of Fred Ross to support its theory (*Id*. at pp. 4-5, citing Doc. 135, Ex. 16).  During his deposition, Ross stated the following:

> Q:    So Custom Body bought to truck, but Custom Sales bought the crane; right?
>
> A:    Correct.
>
> Q:    And then who'd Kehrer pay?
>
> A:    Custom Truck Sales.  **It was all one company.**

(Doc. 137, pp. 4-5, citing Ross Dep. 60:12-16) (emphasis in original).

However, as the facts do not show that the Custom Body entered into an asset purchase transaction or merged with either Custom Truck or Atlas, Plaintiff cannot base its allegations on either a mere continuation or de facto merger theory.  Instead, Plaintiff's argument that the Defendants are essentially one corporate entity, thus all being liable, reflects a "piercing the corporate veil" theory.  All three Defendants are corporate entities.  Illinois deems a corporation as a "distinct legal

entity, separate from other corporations with which it may be affiliated." ***Forsythe v. Clark USA, Inc.,* 836 N.E.2d 850, 646 (Ill. App. Ct. 2005)**. A corporation also exists separately from any of its shareholders, directors and officers, who are generally shielded from any liabilities incurred by the corporation. ***Forsythe*, 836 N.E.2d at 854.** As such, if one corporation owns stock in another, this alone will not serve to make the shareholder corporation the "alter ego" of the other corporation nor will it create an "identity of interest" between the two. ***Main Bank of Chicago v. Baker*, 427 N.E.2d 94, 101 (Ill. 1981)**. However, the Court will disregard the "fiction of the corporate entity" when necessary in the interest of justice" to prevent fraud. ***Matter of Bowen Transports, Inc.*, 551 F.2d 171, 179 (7th Cir. 1977).** To disregard the separate corporate identity of one corporation and treat it as the alter ego of another, "it must be shown that it is so controlled and its affairs so conducted that it is a mere instrumentality of another." ***Main Bank of Chicago*, 427 N.E.2d at 101**

Given that Custom Body has not specifically addressed Plaintiff's argument that it essentially operated as a single entity with the other Defendants, the Court must consider the evidence in the light most favorable to Plaintiff. The statement by Ross that the Defendants were "all one company" creates a question of material fact regarding whether either of Defendants operated as the "alter ego"of one another so that the corporate veil may be pierced. While the evidence is minimal, it is enough to survive summary judgment. Thus, Custom Body is granted summary

judgment with respect to Plaintiff's express warranty claim but is denied summary judgment with respect to Plaintiff's implied warranty claims, finding that there is a question of material fact whether Defendants operated as a single corporate entity rather than three distinct corporate entities.

## V. **Conclusion**

The Court finds that Atlas did not adopt the manufacturer's written Warranty on Plaintiff's Crane. As such, Atlas is not liable under the Warranty, nor are Custom Truck and Custom Body under a successor liability theory. As such, all three Defendants prevail in their motions for summary judgment regarding Count I of Plaintiff's Third Amended Complaint for breach of express warranty. However, the Court finds that a question of material fact exists with respect to whether Plaintiff actually had notice of the Purchase Order disclaimer prior to consummating the sale for the Crane, thus finding the disclaimer possibly ineffective. Accordingly, Count II of Plaintiff's Third Amended Complaint for breach of implied warranties against Atlas survives summary judgment. The Court also finds that a question of material fact exists as to whether Custom Truck is a "mere continuation" of Atlas, so that it could also be potentially liable for Plaintiff's claim of breach of implied warranties. Similarly, the Court finds that a question of material fact exists as to whether the Defendants operated as a single corporate entity (the veil-piercing or alter ego theory), so that Custom Body could also be potentially liable for Plaintiff's claim of breach of implied warranties. Therefore, Count II of Plaintiff's Third Amended Complaint for breach of implied warranties against Custom Truck and Custom Body

survive summary judgment as well.

In sum, Atlas' Motion for Summary Judgment (Doc. 132) is **GRANTED IN PART AND DENIED IN PART**; Custom Truck's Motion for Summary Judgment (Doc. 133) is also **GRANTED IN PART AND DENIED IN PART**; lastly, Custom Body's Motion for Summary Judgment (Doc. 134) is **GRANTED IN PART AND DENIED IN PART**.  Count I of Plaintiff's Third Amended Complaint (Doc. 131) for breach of express warranty is hereby dismissed with prejudice, with Count II for breach of implied warranties remaining.

**IT IS SO ORDERED.**

Signed this 18th day of January, 2008.


/s/        *David R Herndon*
**Chief Judge**
**United States District Court**